## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| SUKENIA MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:06CV973-ID |
| v. | ) | |
| | ) | |
| GLOVIS ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT GLOVIS ALABAMA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT

COMES NOW Defendant Glovis Alabama, LLC ("Glovis" or "Defendant"), and files this Memorandum of Law in Support of its Motion for Summary Judgment seeking dismissal of the five claims pled by Plaintiff Sukenia Marshall ("Plaintiff"). In the event one or more of the Title VII claims survive summary judgment, Glovis moves as well for partial summary judgment on Plaintiff's Title VII damages claims.

### I. Factual Background.

Glovis operates a consolidation center at 300 Hyundai Blvd, Montgomery Alabama. This warehouse receives and stores automotive parts that eventually are sent to customers for use in making automobiles. Elizabeth Lindemann Declaration, ¶¶3-4.[1]

Plaintiff was employed by Glovis for one month. She was hired on or about June 13, 2005 to work as a material handler / general laborer. Plaintiff at 107:14-108:17, 111:9-111:11.

---

[1] Cites to deposition testimony will read "Witness at page:line(s)". Cites to exhibits will read "Exhibit X to Witness' Deposition (Description of Exhibit)". Any declaration will be cited as "Witness Declaration, ¶X." All cited deposition transcripts, exhibits and declarations have been filed with the Court along with the Motion for Summary Judgment and Memorandum in Support; any cited exhibit from a deposition may be found at the end of the deposition at which it was introduced.

In the words of the offer letter sent to Plaintiff, "this position is on the Second Shift which begins at 5:30 p.m. through 2:30 a.m.; however initial job training will be conducted on first shift which begins at 6:30 a.m.." Exhibit 5 to Plaintiff's Deposition (6/7/05 offer letter).

Plaintiff's job required her to keep the shelves in her section of the company warehouse stocked with parts. Plaintiff at 115:17-118:6. To accomplish this task, Plaintiff would review written information to determine what parts were needed in her area, and then work with a forklift operator to get those parts moved from another section of the warehouse to her section. Plaintiff at 115:17-118:6. Plaintiff then would manually place each item in its appropriate place on the shelves. Plaintiff at 121:11-122:5.

Plaintiff claims in her Complaint that one of her immediate supervisors, Ellis Albright, sexually harassed her. She testified in her deposition that this harassment consisted of the following acts:

- Mr. Albright asked her out on two occasions; when she declined, he told her on one occasion that he did not give a damn about her boyfriend, and on another occasion told another employee that she was a brat and so he should not help her lift totes (which are plastic containers filled with parts). Plaintiff at 17:21-18:15, 166:13-167:2.

- Mr. Albright asked another male employee "what do you think I could do with her?". Plaintiff at 165:5-165:13.

- Once, while Plaintiff was standing after lifting a tote, Mr. Albright grabbed her by her belt loop, pulled her back towards him, and said "I like those panties that you have on"; when she said "don't touch me", he let go of her loop, laughed and walked away. Plaintiff at 27:21-31:21, 167:6-167:14.

- On two or three occasions, Mr. Albright asked her what kind of underwear she was wearing. Plaintiff at 167:22-168:9.
- He once made a comment about the size of her rear end. Plaintiff at 33:6-34:16.

This testimony is the heart of Plaintiff's case, underlying her claims for sexual harassment, negligent supervision, assault & battery, and invasion of privacy.

Her retaliation claim, in contrast, hinges on what happened on July 20, the day before her last day of employment on July 21, and the events of July 20 are a matter of some uncertainty and dispute.[2]

The parties agree that on or about July 20, Plaintiff informed Elizabeth Lindemann, then employed as a human resources specialist with Glovis, that she had a conflict with Mr. Albright. Plaintiff at 170:22-171:16; Lindemann at 69:22-70:8. They also agree this was the first time she complained about Mr. Albright to anyone in management. Plaintiff at 172:18-172:20.

According to Ms. Lindemann, the HR specialist, Plaintiff came to her on that day and said that Mr. Albright was "picking on her"; when Ms. Lindemann asked Plaintiff to elaborate, Plaintiff stated that Mr. Albright "was making her do her aisle without anybody's help." Lindemann at 69:22-70:8. Plaintiff then asked Ms. Lindemann if she could leave work early; Ms. Lindemann said no. Lindemann at 71:21-72:6.

Ms. Lindemann testified that this was all that Plaintiff told her on this occasion, and that Plaintiff never said that Mr. Albright was sexually harassing her, or anything to that effect. Lindemann at 37:15-37:22. Based on this, Ms. Lindemann concluded Plaintiff had a complaint

---

[2] Glovis realizes that for purposes of this Motion the Court will construe the facts in Plaintiff's favor, and thus presents them in that light, but believes an understanding of the factual disputes over the nature of Plaintiff's July 20 complaint and her early departure from work that same day are important to understanding the case even at this pre-trial stage.

about proper work assignments, and so referred her to Glovis Manager of Operations Dave
Harris. Lindemann at 72:7-72:20; Plaintiff at 178:4-178:12.

Plaintiff's account differs. According to Plaintiff, she told Ms. Lindemann on July 20 that
"Mr. Albright had been saying some inappropriate things to me and that he was – how he was
trying to make my job difficult for me and that I was just sick of it." Plaintiff at 175:7-175:13.
Plaintiff admits she did not tell Ms. Lindemann about the belt loop incident or that Mr. Albright
had made comments about her underwear. Plaintiff at 175:19-176:2. Plaintiff does not recall
what if any details she gave Ms. Lindemann, and agrees that Ms. Lindemann referred her to Mr.
Harris. Plaintiff at 175:14-175:18, 178:4-178:12.

Plaintiff then spoke to Mr. Harris. Plaintiff at 178:4-178:12. She claims that she told
Mr. Harris that Mr. Albright was harassing her. Plaintiff at 178:4-178:12. She also claims she
told Mr. Harris that Mr. Albright once grabbed her by the belt loop after she had picked up a tote,
that Mr. Albright had made comments about her underwear, and that he once made a comment
about her rear end. Plaintiff at 179:17-180:8. Plaintiff testified that Mr. Harris told her he
would investigate the matter. Plaintiff at 180:9-180:14.

But according to an email sent by Mr. Harris to Ms. Lindemann on July 21, Plaintiff told
him only that Mr. Albright was "always picking her out for work assignments", and that no one
was helping her do her job; there was no mention of any alleged sexual harassment. Lindemann
at 72:7-72:16, 90:16-91:3, 100:13-101:3; Exhibit 2 to Lindemann Deposition (7/20/05 and
7/21/05 email exchange between Dave Harris and Elizabeth Lindemann.)

Plaintiff confirmed that her July 20 discussions with Ms. Lindemann and Mr. Harris were
the only time she complained to any member of management about Mr. Albright during her
employment with Glovis. Plaintiff at 170:17-170:21, 172:18-172-20.

Plaintiff testified that after she met with Mr. Harris, he came to her in the warehouse and asked her if she had been hired for the second shift; she told him that she had been hired for that shift, and he said that as of the following week she should report for that shift. Plaintiff at 185:11-186:1.

Plaintiff contends that this did not bother her, because she knew she had been hired for the second shift. Plaintiff at 185:11-187:9. But Ms. Lindemann testified that Plaintiff and Mr. Harris came to see her after their meeting, and asked Ms. Lindemann to confirm that Plaintiff had been hired for the second shift. Lindemann at 113:23-114:20. According to Ms. Lindemann, when she confirmed this fact after checking the offer letter in Plaintiff's personnel file, Plaintiff stated that she was upset and that she needed to leave work early. Lindemann at 116:1-120:10. Ms. Lindemann then told Plaintiff that she did not have permission to do so, and that she should return to work. Lindemann at 116:1-120:10.[3]

For her part, Plaintiff testified that she became upset on July 20 because other employees had learned of her complaint against Mr. Albright and were discussing it in the warehouse. Plaintiff at 181:2-181:13. She also claims that she asked Ms. Lindemann for permission to leave work early, and that Ms. Lindemann gave her permission to do so. Plaintiff at 181:2-181:13.

Regardless, Plaintiff concedes that she left work early on July 20, before the end of her shift. Plaintiff at 190:2-190:11. Ms. Lindemann then was informed that Plaintiff had left, and Ms. Lindemann subsequently told Mr. Harris that Plaintiff had left work before the end of her shift, without permission to do so. Lindemann at 119:5-120:15. Ms. Lindemann testified that when she gave this news to Mr. Harris, he told her that this behavior was not acceptable and that

---

[3] A contemporaneous email exchange between Mr. Harris and Ms. Lindemann is consistent with this account. Exhibit 2 to Lindemann Deposition (7/20/05 and 7/21/05 email exchange between Dave Harris and Elizabeth Lindemann.)

action would be taken, by which he meant that he would discharge Plaintiff. Lindemann at 119:5-120:15, 125:14-126:4, 128:21-130:2.

On the next day, July 21, Mr. Harris informed Plaintiff that she would be discharged for job abandonment, as a result of leaving work before the end of her July 20 shift. Plaintiff at 192:1-192:18; Exhibit 2 to Lindemann Deposition (7/20/05 and 7/21/05 email exchange between Dave Harris and Elizabeth Lindemann.). Plaintiff testified that she told Mr. Harris that Ms. Lindemann had given her permission to go, and that Mr. Harris told her that Ms. Lindemann was not at work that day but that Plaintiff could call her when she was in and talk to her about it. Plaintiff at 192:19-193:3. Plaintiff testified that she called Ms. Lindemann the next day, and that Ms. Lindemann told her that "I'm going to have to go with what Dave said", and thus that the discharge decision would stand. Plaintiff at 195:7-196:12.

In February 2006, seven or so months after Plaintiff's discharge, a contract employee made a complaint of sexual harassment against Ellis Albright. Lindemann at 139:19-142:10. Glovis investigated that complaint, concluded it had merit, and discharged Mr. Albright as a result. Lindemann at 183:23-185:2.

## II.    Summary Judgment Standard.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the evidence and all factual inferences from it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir.1999). Critically, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

### III.    Argument.

Plaintiff has five claims: (1) sexual harassment, (2) retaliation, (3) negligent supervision, (4) assault and battery, and (5) invasion of privacy. Her Amended Complaint seeks $850,000 on her Title VII claims. Glovis will address the substantive and damages claims in that order.

### A.    Sexual Harassment.

To make out a prima facie case of sexual harassment, Plaintiff must show (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

When the alleged harassment is attributed to a supervisor, the plaintiff may rely on one of two theories to establish the fourth and fifth elements of her sexual harassment claim. *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1246 (11th Cir. 2004); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998).

Under the first or "tangible employment action" theory, the plaintiff must prove that the harassment culminated in an adverse tangible employment action against her. *Ellerth,* 524 U.S. at 753-54. Under this theory, if a plaintiff proves that the employer permitted a supervisor to take a tangible employment action against the plaintiff because she refused to give in to his sexual overtures, the employer is liable for the harassment. *Hulsey*, 367 F.3d at 1246.

7

Under the second or "no tangible employment action" theory, the plaintiff must prove that the harassment was sufficiently severe and pervasive to effectively cause a change in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 118 S.Ct. 2275, 2283 141 L.Ed.2d 662 (1998). Under this theory, the employer may avoid vicarious liability by asserting the affirmative defense set forth by the Supreme Court in *Faragher* and *Ellerth*. *Hulsey*, 346 F.3d at 1246.

### 1.    Mr. Albright Did Not Play a Role in the Decision to Discharge Plaintiff, and Thus Plaintiff Cannot Prove Tangible Employment Act Harassment.

Plaintiff testified that she did not know if Mr. Albright played a role in the decision to end her employment, and that she believed that decision was made by Dave Harris, Glovis' Operations Manager. Plaintiff at 210:21-211:4. Ms. Lindemann testified that this decision was in fact made by Mr. Harris. Lindemann at 85:16-85:19.

Thus, Plaintiff cannot show that Mr. Albright's alleged harassment led to a tangible employment action. *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1279-80 n. 7 (11th Cir. 2003) (where harasser did not play role in decision to end plaintiff's employment, plaintiff could not show the harassment culminated in a tangible employment action); *see also Johnson v. West*, 218 F.3d 725, 731 (7th Cir. 2000); *Hill v. American General Finance, Inc.*, 218 F.3d 639, 643 (7th Cir. 2000) (employer was allowed to assert *Ellerth* defense where plaintiff was terminated by someone other than the alleged harasser, and plaintiff claimed that her termination was an act of retaliation, not that it related to the alleged harassment).

Thus, the only way Plaintiff can make out a prima facie case of harassment is by showing that Mr. Albright's conduct altered the terms and conditions of her employment. To do this,

Plaintiff must proffer evidence that Mr. Albright's conduct was sufficiently severe and pervasive to meet this mark.

### 2.    Mr. Albright's Conduct Was Not Severe or Pervasive.

Courts consider the following four factors in analyzing the fourth harassment element – i.e., whether alleged harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening and humiliating or just a mere utterance; and (4) whether the conduct unreasonably interfered with the employee's work performance.  *Hulsey*, 367 F.3d at 1247-48.  Courts also look at the alleged conduct in context and cumulatively, and weigh the totality of the circumstances, to determine if an environment is actionably hostile.  *Id.* at 1248.

Plaintiff testified that Mr. Albright said or did the following things to her:

- Mr. Albright asked her out on two occasions; when she declined, he told her on one occasion that he did not give a damn about her boyfriend, and on another occasion told another employee that she was a brat and so he should not help her lift totes.  Plaintiff at 166:13-167:2.

- Mr. Albright asked another male employee "what do you think I could do with her?".  Plaintiff at 165:5-165:13.

- While she was standing after lifting a plastic bin, Mr. Albright grabbed her by her belt loop, pulled her back towards him, and said "I like those panties that you have on"; when she said "don't touch me", he let go of her loop, laughed and walked away.  Plaintiff at 27:21-31:21, 167:6-167:14.

- On two or three occasions, Mr. Albright asked her what kind of underwear she was wearing.  Plaintiff at 167:22-168:9.

■   He once made a comment about the size of her rear end.  Plaintiff at 33:6-34:16.

Those are the sum total of allegations made by Plaintiff against Mr. Albright.

Plaintiff conceded that Mr. Albright never propositioned her, never cursed at her in a sexual way, never talked about sex around her, and never showed her any sexually explicit material.  Plaintiff at 168:19-170:16.

Looking at Plaintiff's allegations in light of the four factors laid out as important in Hulsey:

(1) the frequency of the conduct:

The alleged conduct occurred between five and seven times over a month, and so was not an everyday event.

(2) the severity of the conduct:

Mr. Albright allegedly grabbed Plaintiff's belt loop once, but let go once she told him to. Mr. Albright otherwise never touched her, and never tried to kiss her, proposition her, or show her sexually explicit material.

(3) whether the conduct was physically threatening and humiliating or just a mere utterance:

As noted previously, aside from the one belt loop incident, it consisted solely of comments Plaintiff apparently did not welcome, but comments that were not overtly sexual in nature or threatening.

(4) whether the conduct unreasonably interfered with the employee's work performance:

Plaintiff testified that until her last full day of employment on July 20, when she left early, "I was fine.  I didn't have any problems, I didn't have to leave."  Plaintiff at 191:2-191:8. This suggests that however unpleasant she found Mr. Albright, he did not unduly interfere with

her work. In addition, Plaintiff did not complain to Ms. Lindemann or other higher management about Mr. Albright until July 20, weeks after she says his conduct began, which also suggests she did not find his conduct to be unduly offensive.

Viewed in the light of Eleventh Circuit precedent, the infrequent nature of the complained of actions and the relative mildness of them compel the conclusion that Mr. Albright's alleged actions could not have objectively altered the terms and conditions of Plaintiff's employment.

For example, in *Mitchell v. Pope*, 2006 U.S. App. LEXIS 17868 (Jul. 14, 2006) (unpublished opinion), the plaintiff claimed that the alleged harasser engaged in 16 instances of offensive conduct over four years, including three efforts to intimately touch or kiss her. The Eleventh Circuit held that this alleged conduct "is not the kind of 'severe' harassment necessary for liability to attach under Title VII." *Id.* at *5-6.

Similarly, in *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246-47 (11th Cir. 1999) (en banc), the alleged harasser told the plaintiff, "I'm getting fired up," rubbed his hip against the plaintiff's hip while touching her shoulder and smiling, twice made a sniffing sound while looking at the plaintiff's groin area and once sniffed without looking at her groin, and constantly followed and stared at the plaintiff in a "very obvious fashion." This pattern of conduct is far more offensive than anything experienced in this case by Plaintiff, but the Eleventh Circuit held it fell short of the actionable mark.

More recently, in *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 584-86 (11th Cir. 2000), the alleged harasser said the plaintiff was "looking very beautiful," called her at home, unbuckled his pants and tucked in his shirt in front of her, stared at her twice, touched her ring and kept asking her to lunch, placed his hand on her knee, and touched the hem of her dress.

11

Again, the Eleventh Circuit held that this was not enough to state a harassment claim.[4]

Perhaps the best way to illustrate how Plaintiff's allegations fall short is by looking at those cases in which the Eleventh Circuit has found enough evidence to allow a harassment claim to go to trial. Take *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501 (11th Cir. 2000). The plaintiff in that case alleged that over the course of four months, the alleged harasser engaged in fifteen acts of harassment, including pulling his pants against himself in such a way as to reveal the imprint of his genitals; repeatedly trying to rub her shoulders although she asked him not to touch her; inappropriately rubbing himself against her; and questioning her abut her sex life. *Id.* at 506.

Or take *Hulsey*, 367 F.3d at 1238. There, the plaintiff alleged that the purported harasser engaged in 18 different acts of harassment in 2 weeks, ranging from direct and indirect propositions for sex to following her to the restroom to repeated attempts to touch her breasts, to

---

[4] A long line of other cases reach the same conclusion - i.e., that minor and infrequent touching plus a few rude comments are not severe and pervasive enough to create an objectively hostile work environment. *See, e.g., Henderson v. Waffle House*, 2007 U.S. App. LEXIS 15929, *8-9 (11th Cir. Jul. 28, 2007) (holding that one unwelcome incident of touching and several rude comments were not sufficient to state harassment claim); *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 327 (5th Cir. 2004) (one instance of grabbing or brushing plaintiff's breasts and buttocks, slapping plaintiff on buttocks with newspaper, trying to kiss her, and commenting on another employee's body over one and a half year period not severe enough to support harassment claim); *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 992, 993 (8th Cir. 2003) (one incident of grabbing plaintiff's buttock "with force" and joking about it not actionable); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) (four isolated instances in which a co-worker touched the plaintiff's arm, fingers or buttocks not actionable); *McNorton v. Ga. Dept of Transportation*, 2007 U.S. Dist. LEXIS 91933, *41-42 (Dec. 11, 2007) ("[I]t is fairly well established that a single instance of touching an employee's buttock, such as the case here, is not serious enough to support a claim for sexual harassment."); *Otu v. Papa John's USA, Inc.*, 400 F. Supp. 2d 1315, 1327-28 (N.D. Ga. 2005) (attempting to hug and kiss plaintiff, brushing her breasts against plaintiff's back, attempting to "rub his private parts," and unbuttoning her blouse not severe or pervasive); *Evans v. Mobile Infirmary Med. Ctr.*, No. Civ.A. 04-0364-BH-C, 2005 WL 1840235, at * 9 (S.D. Ala. 2005) (comments about plaintiff's breasts, grabbing her buttocks on two occasions, and touching her breasts on one occasion not severe or pervasive).

put his hands inside of her pants, and to pull down her pants. *See also Jackson v. Cintas Corp.*, 391 F. Supp. 2d 1075, 1087-90 (M.D. Ala. 2005) (DeMent, J.) (denying summary judgment on sexual harassment claim, on grounds that alleged harassment was severe and pervasive enough to create a jury question, where among other things alleged harasser twice touched plaintiff's breasts, grabbed his genitals in front of her, propositioned plaintiff repeatedly, told plaintiff several times a day for a year that he wanted to have sex with her, and told her that "going down" on him would lead her to "high places" at the company.)

This is the kind of misconduct Title VII is aimed at eliminating. By contrast, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788, 118 S. Ct. at 2283 (citation omitted). But that is all Plaintiff has alleged in this case.

In light of Plaintiff's allegations and the noted cases, summary judgment is due on Plaintiff's sexual harassment claim.

### B.    Retaliation.

To make out a prima facie case of retaliation under Title VII, a plaintiff must show (1) she engaged in protected conduct, (2) she suffered some materially adverse action by the employer, and (3) a causal nexus between the two. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006); *Gupta*, 212 F.3d at 587. If she can make that showing, the defendant must proffer a non-retaliatory reason for the adverse act (assuming one occurred), and the plaintiff then must point to evidence that could convince a reasonable jury that the proffered reason was not true and that retaliation was the real reason for the act. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000).

Plaintiff cannot make out a prima facie case because she cannot show that she engaged in any protected conduct. Even if she could, she cannot show pretext.

Turning first to Plaintiff's prima facie case, under Title VII, an employee engages in protected action if "he has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause) or "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause). 42 U.S.C. § 2000e-3(a).[5]

These are distinct protections, and require different showings by a would-be plaintiff. Plaintiff cannot show protected conduct under either provision.

First, "[t]he participation clause covers participation in 'an investigation … under this subchapter,' that is, an investigation under subchapter VI of Chapter 21 of Title 42 (42 U.S.C. §§ 2000e-2000e-17)." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2002). Thus, to claim retaliation under the participation clause, "[a]t a minimum, some employee must file a charge with the EEOC (or its designated representative) or otherwise instigate proceedings under the statute for the conduct to come under the participation clause." *Id.*

It is undisputed that Plaintiff filed her EEOC Charge in December 2005, after she stopped working at Glovis. *See* Complaint, Exhibit 2 (12/8/05 EEOC charge). Plaintiff has not alleged that she was participating in any other proceeding under the statute during her employment. Because no EEOC Charge was filed before Plaintiff stopped working at Glovis, she cannot claim she was retaliated against pursuant to the participation clause. *Id.*

---

[5] Plaintiff's Amended Complaint does not indicate whether she is basing her retaliation claim on the participation or opposition clause, *see id.* at ¶¶36-37, so in the interest of caution Glovis addresses both in its Memorandum.

Turning to the opposition clause, it requires a would-be plaintiff to have "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). The conduct opposed need not actually constitute sexual harassment, but it must be close enough to support an objectively reasonable belief that it was. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Id.* If a plaintiff cannot make this showing, summary judgment is due for the employer. *Id.*

Opposition clause acts are viewed in the context of the ordinary business environment, and thus are given less protection than participation clause acts. *Total System Services, Inc.*, 221 F.3d at 1176.

As noted in the prior section concerning Plaintiff's sexual harassment claim, Plaintiff's allegations of harassment fall short of the actionable mark. Moreover, they do not rise to a level that would lead a reasonable person to believe that she was experiencing harassment. To recap, Plaintiff alleges that Mr. Albright asked her out twice, made improper comments about her underwear a few times, and once pulled her towards him using her belt loop. *See infra* at 9-10. He never cursed at her in a sexual way, talked to her about sex, showed her sexually explicit material, or (save the belt loop incident) touched her. He never made derogatory comments about women, or about Plaintiff as a woman. If this is enough to create a basis for a retaliation claim, then the courts will be busy indeed.

In this respect, Plaintiff's claim is similar to a retaliation claim addressed by Judge Thompson in *Blevins v. Heilig-Meyers Corp.*, 52 F. Supp. 2d 1337 (M.D. Ala. 1998). The

plaintiff in *Blevins* alleged that her alleged sexual harasser used a racially derogatory term to refer to an African-American employee; commented that another employee "had better get her fat ass over here" to perform her job duties; regularly swore at employees about work that remained undone; and used foul language to tell several employees that if the employees did not complete their work filing, one of them would end up on the unemployment line.

Reviewing these allegations, the Court held that "[t]he evidence presented by Blevins suggests that Holcomb was rude and vulgar but not physically threatening or humiliating to Blevins", and thus that "[t]his is not the type of behavior prohibited by Title VII". Accordingly, the Court held that the plaintiff's allegations did not show an objectively reasonable belief that harassment had occurred, and thus that her retaliation claim did not survive summary judgment. *Id.* at 1350-51.

Similarly, in *McNorton*, 2007 U.S. Dist. LEXIS 91933 at *41-42, another retaliation case based on a plaintiff's complaint about improper but not egregious conduct by another employee, Magistrate Judge Baverman of the Northern District of Georgia noted that "it is fairly well established that a single instance of touching an employee's buttock, such as the case here, is not serious enough to support a claim for sexual harassment." For this reason, the Court there held that the plaintiff could not have had an objectively reasonable belief that harassment had occurred, and thus that summary judgment was due on the retaliation claim.

As was the case in *Blevins* and *McNorton*, this case features alleged conduct that is rude and inappropriate, but does not approach an actionable level of sexual harassment. Accordingly, Plaintiff did not have a reasonable belief that she was experiencing sexual harassment, and so summary judgment is due on her retaliation claim.

Even if Plaintiff could make out a prima facie case of retaliation, however, Glovis has a clear non-retaliatory reason for its decision to end her employment – she left work before the end of her shift.

Thus, to survive summary judgment, Plaintiff must offer some evidence that would permit a reasonable jury to find Glovis' stated reason for the end of her employment - job abandonment by virtue of her decision to leave the job before the end of her shift - is false, and that retaliation was the true motive for her discharge. *Brooks v. County Comm's of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). Specifically, in a case like this one where the defendant asserts the plaintiff was let go for violating a work rule, the Eleventh Circuit has held that a plaintiff may show pretext in one of two ways: by showing "(1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999) (cites omitted).

There is no evidence of either point. First, with respect to the truth of Glovis' contention that Plaintiff left work early, Plaintiff concedes she left work before the end of her shift, and thus concedes that she violated the work rule in question. Plaintiff at 190:2-190:11. Plaintiff insists she had permission to do so, but has not offered any corroborating evidence of this allegation.

The Eleventh Circuit faced this exact fact pattern in *Moore v. ITT Tech Inst.*, 2007 U.S. App. LEXIS 3502 (11th Cir. Feb. 13, 2007) (unpublished). In that case, one of the plaintiffs alleged that she had permission to miss a company event; the employer contended that she did not, and discharged her for missing the event. Rejecting the plaintiff's claim that this dispute was sufficient to create a triable question on her retaliation claim, the Court held, "Although she contends that she had permission to miss the event in question, she concedes that her immediate

supervisor, who was not the decision maker about her termination, told the ITT officials who were the decision makers that she did not have his permission." *Id.* at *4. Given this, the Court affirmed the lower court's summary judgment grant.

This is the very sequence of events in this case: Plaintiff claims Ms. Lindemann gave her permission to leave early, but does not dispute that Ms. Lindemann told Mr. Harris (who made the discharge decision) that Plaintiff left work without permission. Lindemann at 119:5-120:15.

Accordingly, under *Moore*, Plaintiff's conclusory assertion that she had permission to leave early is not enough to create an issue of pretext. This is in keeping with the long established precept that a "plaintiff's allegations, opinions, and conclusory statements are insufficient to create an issue of fact as to show intent to discriminate." *Blount v. Alabama Coop. Extension Serv.*, 869 F. Supp. 1543, 1553 (M.D. Ala. 1994) (DeMent. J.); *see also Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment"); *Hendricks v. Baptist Health Servs.*, 278 F. Supp. 2d 1276, 1289 , 1289 (M.D. Ala. 2003) (Fuller, C.J.) ("unsubstantiated assertions [ ] alone, are not enough to withstand a motion for summary judgment."); *Malladi v. Brown*, 987 F. Supp. 893, 920 (M.D. Ala. 1997) (Thompson. J.) (holding same in a retaliation case).[6]

In addition, Plaintiff does not have any evidence that other employees left work early yet were not let go. Plaintiff at 207:4-207:12. Glovis on the other hand has produced evidence that it has regularly let employees go for walking off the job as Plaintiff did. Elizabeth Lindemann Declaration, ¶¶8-9. Thus, Plaintiff has no evidence that she was treated more harshly than others

---

[6] Further, it is well settled that a plaintiff's insistence that a Title VII defendant is untruthful does not suffice to make that point. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *Lemaire v. Louisiana*, 480 F.3d 383, 391 (5th Cir. 2007).

outside the protected class in like situations, and so cannot show pretext in that way. *Damon*, 196 F.3d at 1363.

Further, both Ms. Lindemann and Mr. Harris have said that they believed Plaintiff left work early without permission to do so, and that this led to her termination. Lindemann at 119:5-120:15, 125:14-126:4, 128:21-130:2; Exhibit 2 to Lindemann Deposition (7/20/05 and 7/21/05 email exchange between Dave Harris and Elizabeth Lindemann.). Plaintiff does not have any evidence to suggest either person is lying. Accordingly, Glovis had a good faith belief that Plaintiff had left early without permission when it decided to let her go, and even if Ms. Lindemann and Mr. Harris were mistaken, this would not show that Plaintiff's termination was retaliatory. "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon*, 196 F.3d at 1363 n. 3; *see also Montgomery v. White*, 2006 U.S. Dist. LEXIS 60199, *36 (M.D. Ala. Aug. 24, 2006) (Fuller, C.J.); *Hendricks v. Baptist Health Servs.*, 278 F. Supp. 2d 1276, 1289 (M.D. Ala. 2003) (Fuller, C.J.)

Finally, Plaintiff may point to the timing of her discharge, and argue that this in itself shows pretext. But timing alone cannot establish pretext where an employer has offered an unrebutted basis for a discharge. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001) (temporal proximity alone insufficient to show pretext on Title VII retaliation claim where defendant's reasons for discharge not rebutted); *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997) (same in ADA retaliation case); *Swanson v. Civil Air Patrol*, 37 F.Supp.2d 1312, 1335-1336 (M.D. Ala. 1999) (Albritton, J.).

For the stated reasons, Plaintiff's retaliation claim should be dismissed at summary judgment.

### C.    Negligent Supervision.

To recover against an employer under the theory of negligent supervision, a plaintiff first must show "by affirmative proof that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Ledbetter v. United Am. Ins. Co.*, 624 So. 2d 1371, 1373 (Ala. 1993). An essential element of negligent supervision is the employer's notice of the employee's improper conduct. *Lane v. Central Bank of Alabama, N.A.*, 425 So. 2d 1098 (Ala. 1983). Absent such notice, there is no viable negligent supervision claim.

Plaintiff admitted that she does not know what if any training Mr. Albright received at Glovis, nor what if any discipline he received while working there. Plaintiff at 144:23-145:5. Similarly, there is no evidence that anyone informed Glovis of any alleged misconduct by Mr. Albright until Plaintiff claims to have done so in late July, nor is there evidence that Mr. Albright did anything wrong to Plaintiff after her complaint. These facts dictate summary judgment on this claim. *Jackson*, 391 F. Supp. 2d at 1101 (M.D. Ala. 2005) (DeMent, J.) (granting summary judgment on negligent supervision claim based on alleged harassment by supervisor, because there was no evidence that harassment continued after plaintiff complained and employer investigated) (citing *Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 987 (Ala. 1999); *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003-04 (Ala. 1993)).

Further, it is undisputed that Glovis investigated the February 2006 complaint by a contract employee against Mr. Albright and then discharged him, which also cuts against any notion that the company was negligent in overseeing him. Lindemann at 183:23-185:2.

Given the evidence, no reasonable jury could find that Glovis negligently supervised Mr. Albright during Plaintiff's employment, and so summary judgment is due on this claim.[7]

### D.      Assault & Battery.

Plaintiff's fourth claim is for assault and battery. It is based solely on Mr. Albright's alleged action of grabbing her belt loop. Plaintiff at 153:3-155:10.[8]

Under Alabama law, to recover against an employer for an intentional tort allegedly committed by one of its employees, a plaintiff must show either that the act was committed in the furtherance of the employer's business, that the act was within the scope of employment, or that the employer engaged in, authorized or ratified the act. *Ex parte Atmore Community Hospital v. Hayes*, 719 So.2d 1190, 1194 (Ala. 1998). Plaintiff cannot show any of these bases for liability.

First, in *Doe v. Swift*, 570 So.2d 1209, 1211-12 & n. 3 (Ala. 1990), the Alabama Supreme Court held that alleged sexual misconduct by an employee is purely personal and thus outside the scope of employment. *See also Joyner v. AAA Cooper Transp.*, 477 So. 2d 364 (Ala. 1985) (plaintiffs' assault and battery claim against company, based on allegation that supervisor forced them to have sex with him, failed because such facts cannot show supervisor was acting in

---

[7] In addition, a plaintiff alleging negligent supervision in Alabama must establish some underlying tort in order to prevail on a negligent supervision claim. *See Univ. Fed. Credit Union v. Grayson*, 878 So. 2d 280, 291 (Ala. 2003) (noting "that a party alleging negligent supervision and hiring must prove the underlying wrongful conduct"). Thus, if the Court find Plaintiff's other claims should be dismissed, the negligent supervision claim should be dismissed as well on this basis.

[8] Initially, it does not appear that plaintiff has a claim for assault. An assault claim requires the plaintiff to prove an intentional unlawful attempt to touch another in a rude or angry manner and in such a way as to create in the mind of the other person a well founded fear of an imminent battery. *Wood v. Cowart Enters.*, 809 So.2d 835, 837 (Ala. Civ. App. 2001). Plaintiff testified that Mr. Albright only touched her once, and did so by walking behind her and then grabbing her belt loop. Plaintiff at 27:21-31:21. By this account, Plaintiff could not have seen Mr. Albright before he grabbed her loop, and so could not have formed the fear of contact necessary to state an assault claim.

furtherance of or in the scope of employment). Thus, Plaintiff cannot show Mr. Albright's alleged acts furthered Glovis' business or were within the scope of his employment.

Plaintiff likewise cannot show that Glovis engaged in, authorized or ratified Mr. Albright's alleged conduct. "An employer ratifies an act when 1) it expressly adopts the employee's behavior, or 2) it implicitly approves the behavior." *East Ala. Behavioral Medicine, P.C. v. Chancey*, 883 So.2d 162, 169-70 (Ala. 2003). Plaintiff has no evidence that Glovis adopted Mr. Albright's behavior or that it approved it. Indeed, she testified that no one at the company urged him to grab her belt loop or wanted him to do that, that grabbing her belt loop was not part of his job, and that she thought Mr. Albright did this for his own selfish purposes. Plaintiff at 153:11-155:7. Likewise, there is no evidence that anyone informed Glovis of any alleged misconduct by Mr. Albright until Plaintiff did so, and there is no evidence that Mr. Albright did anything wrong to Plaintiff after her complaint. Together these facts show no ratification occurred. *Id.* Further, Mr. Albright was discharged a few months after Plaintiff's employment ended, following Glovis' investigation of an actual harassment complaint against him, so any such claim would ring hollow. Lindemann at 183:23-185:2.

For the stated reasons, Glovis believes summary judgment is due on the assault and battery claim.

### E.    Invasion of Privacy.

Plaintiff's final claim is for invasion of privacy. To establish this claim, a plaintiff must show 1) that the matters intruded into were of a private nature, and 2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation. *Hayes*, 719 So.2d at 1194. This claim is based solely on

Plaintiff's allegations that Mr. Albright asked her a few times about her underwear.  Plaintiff at 146:14-150:16.

First, while the Alabama Supreme Court has held that severe sexual harassment can be an invasion of privacy, *see Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 324 (Ala. 1989), Plaintiff did not experience that, as discussed earlier, and thus summary judgment is due on this basis. *See, e.g., Armstrong v. Std. Furniture*, 2006 U.S. App. LEXIS 22421, *8-9 (11th Cir. Aug. 30, 2006) (unpublished) (affirming grant of summary judgment on invasion of privacy claim based on alleged harasser's statement that he would handcuff plaintiff to a bed and one comment about her underwear.)

Regardless, as with the assault and battery claim, invasion of privacy is an intentional tort, and so Glovis can be liable for Mr. Albright's acts only if Plaintiff can show that he did them in furtherance of the company's business, that they were within the scope of his employment, or that Glovis engaged in, authorized or ratified them.  *Id.*.

Again, for the reasons discussed in relation to the assault and battery claim, Plaintiff has not produced any evidence that Mr. Albright's alleged acts furthered Glovis' business or were in the scope of his job, or that the company engaged in, authorized or ratified the alleged acts. Accordingly, Glovis contends summary judgment is due on this final claim as well.

> ### F.    Fed.R.Civ.P. 56(d) Motion for Partial Summary Judgment: Plaintiff's Title VII Damages Claims.

Title VII includes a damages cap limiting potential awards of compensatory and punitive damages under the statute.  Briefly put, for companies with more than 100 and fewer than 201 employees during the "current or preceding calendar year", compensatory and punitive damages are limited to $100,000 a plaintiff, however many claims the plaintiff may have.  42 U.S.C. §1981a(b)(3)(B) (stating that "[t]he sum of the amount of compensatory damages awarded under

this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party", the amounts indicated in the statute); *see Rau v Apple-Rio Mgmt. Co.*, 85 F Supp 2d 1344, 1347 (N.D. Ga. 1999) ("[t]he court agrees with defendant and with every other court that has addressed the issue, and finds that the plain language of § 1981a requires application of the cap to the action as a whole, not to each individual claim.") (cites omitted), *aff'd without op.* 251 F3d 161 (11th Cir. 2001).

In determining how many employees a defendant had for purposes of the statute, courts look at the year in which the alleged discriminatory acts took place. *Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 621-22 (4th Cir. 2007); *Vance v. Union Planters Corp.*, 209 F.3d 438, 446 (5th Cir. 2000).

Plaintiff was employed for about a month in 2005. In that year, Glovis had between 101 and 200 employees. Amended Complaint, ¶9; Elizabeth Lindemann Declaration, ¶6. Despite this fact, Plaintiff's Amended Complaint seeks $500,000 in compensatory and punitive damages on her Title VII retaliation claim, and $350,000 compensatory and punitive damages for her sexual harassment claim. Amended Complaint, ¶¶38, 41. Both are far in excess of the damages cap.

Accordingly, should either claim survive summary judgment, Glovis moves the Court under Fed.R.Civ.P. 56(d) for a ruling limiting Plaintiff's would-be compensatory and punitive damages on any surviving Title VII claims to a maximum of $100,000.

Respectfully submitted this 12th day of February, 2008.

**Nelson Mullins Riley & Scarborough LLP**

Daniel M. Shea
Christopher S. Enloe
ENL001

999 Peachtree Street, N.E.
Suite 1400
Atlanta, Georgia 30309
Telephone:    (404) 817-6000
Facsimile:    (404) 817-6050

**ATTORNEYS FOR DEFENDANT
GLOVIS ALABAMA, LLC**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

SUKENIA MARSHALL,                    )
                                     )
              Plaintiff,           )
                                     )
                                     )   Civil Action No. 2:06CV973-ID
     v.                             )
                                     )
GLOVIS ALABAMA, LLC,                 )
                                     )
             Defendant.           )
_____)
                                     )

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2008, a true and correct copy of the foregoing Memorandum of Law in Support of Summary Judgment and Partial Summary Judgment was served on Plaintiff's counsel of record via the "Notice of Electronic Filing" that is automatically generated by the Court's Electronic Filing System, addressed as follows:

        Dwayne L. Brown, Esq.
        dbrown@dbrownatty.com
        P.O. Box 230205
        Montgomery, AL  36123-0205

                             _____
                             Chris Enloe